The next case is case number 4-15-0259, Joshua Kruger et al. v. Roger Walker et al. Appearing for the appellant is Attorney Robert Kaplan, and for the appellees, Attorney Caitlin Buell is it? All right, thank you. Mr. Kaplan, are you ready to proceed? You may. First thing I would like to do is correct the record on page 19 of the brief. There was a slight typo that kind of changed the meeting a little bit. It's over the big title that says circuit court has jurisdiction. The sentence immediately before that says the trial court should to have interceded. The word to should be not. Somehow my word processor does that, and usually I catch it in my apologies. Now, this is a rare opportunity because usually one does not get oral argument on what to stand about to a petition for rehearing. The trial judge relied upon Jackson v. Randall, and that came from this court, and it was quite quick. Although each of us argued eloquently, he very quickly said, I'm bound by Jackson v. Randall. I can't do anything else. I'll put that in the order. That's what happened, and a lot of issues were intended to because of that. So the whole process of this appeal is to try to explain to this court why Jackson should not be relied upon. There was a wrong done. First of all, we are relying upon the pleadings. If you look at the pleadings, even the auditor general has said that the state made a mistake, that the DOC made a mistake, that they should not have been overcharging like that, and they wouldn't stop. So that's an indication of a wrong. We look at the statute. The statute is clear as to what the commissary can charge, what can be charged and not charged, and it gives specific limits. Now, they don't have to put up a commissary at all, but if they do, they have to follow the rules. And one of the cases that was cited by the state here is that of rule. Notice in paragraph 27 of rule, it says that rule did not have the problem of comparing an administrative rule to the statute. Here we do. We have a violation of the statute, but that wasn't the case in the rule. And the violation of the statute is you can discharge so much, you can't charge any more. And we try to set forth in the brief that there are several that we want to write, probably write a cause of action, but the statute doesn't say you can have one. There has to be certain elements. You have to be a member of the class that's being harmed. There has to be benefits to them. And so it is clear that the member of the class, it's clear that they have the benefit of the commissary, but they do have a benefit of not being overcharged because there's a statutory limit. It's the legislature put that in for a reason, and the defense is blew right by it. The purpose, well, to give them a commissary is number one, but also is the rehabilitation aspect of it also. And then the last one, the private right is necessary because nobody else is asking to force it, except a myriad of defenses are coming up in various courthouses all over the place. So I think we have set forth that a wrong has been committed, and I'm representing four prisoners who are now held in captivity because of the rule of law. Now, what the defendants here did is not as serious as what my clients may have done. I'm not going over what didn't represent them. I don't know what they did or didn't do. Somebody found out they had done things because they had violated the law. A consequence has had to occur. And the same thing with civil law. When you violate civil law, there are consequences for it. In this case, we're trying to find somebody to give us a remedy so we can have a consequence for violating the law. And so far, it has not happened. Now, what makes this case a little bit unique than the other cases is that this is a case that involves a financial interest. And that one we go back to the Hadley case. Hadley was the one that dealt with the deductible being taken out. And the Supreme Court says you have to read the statute. What do they mean by indigent at the time? And it doesn't say you can backcharge a guy if he's indigent at the time he needs services. So he had a right to sue. Not in the court of claims, but he had a right to sue in the circuit court for money, a money problem. And this is the money problem. These guys are being overcharged. And as I read any of the other cases, whether it be Jackson v. Randall or any other case, I don't see that distinction being made, except now for the first time. If it has been, I would stand corrected, but I couldn't find it. And so far, nobody's brought it up to me where that appears. So this is not a question, though, such as where, how much property can a guy have in his cell? Or does he have, you know, what's he going to be eating, that type of thing. It has to do with his money, his pocketbook. Financial interest, a property interest versus a liberty interest. And the Supreme Court has allowed liberty interest. The point's been made that, well, if there's a financial interest, I've lost my point, sorry. Can you bear with me just one second? I'll have to come back to that as I can. So we're dealing with, again, going back to the prisoner aspect of it. These fellows are seen, they are held to the rule of law, and then, but the state isn't. In fact, the state not only seems to violate the law with the DOC and the two individual defendants here. When they went to the court of claims, the court of claims said, you can't come here. And we gave you evidence of that, how that came about. That's the issue of inclusion issue we have here. And then, but now they still say, you have to go to the court of claims. Well, they themselves have said you can't go to the court of claims and got the benefit of that by having a case dismissed. You have to have a rule of law. If you have a violation of the law, there has to be some way to do it. Now I'm making this up out of a whole straw because the court had already said, if there's a financial interest involved, you can do it. I think I have my point there, hopefully. When you have the financial interest, Well, counsel, I have a question for you. Even if we were to disregard Jackson and look at the factors that you said we should look at in determining whether or not standing is appropriate, if you don't satisfy the criteria that the statute was enacted for the benefit of the inmates, does that mean that you lose even if we don't apply Jackson? I'm missing the point. The statute, I believe, was made in general for a good prison system. That will benefit the administration. That benefits the inmates also. Now, have I missed your point? Well, but the question becomes, was the statute designed to protect the inmates? Was it designed for them? In part, yes. And what's your basis for that? I've read you the statute. That's just my opinion. We set forth the statute. On page 8, I note that the code allows for a private cause of actions where this appears. The code is to prevent arbitrary and impressive treatment of offenders. That's for the benefit of the prisoners. And to restore offenders to useful citizenship. You say the code. You're talking generally the Unified Code of Corrections? Yes. It's a citation that they did in the brief. 730 ILCS 51-1-1, et cetera. Justice Holder wants questions a little more specific. It's this specific statutory provision. Can you answer it as to this specific statutory provision? Yes. This specific statutory provision says that if they're going to have a commissary, we've already acknowledged they don't have to, but if they do, this statute says you can't charge, take money away from these people more than a certain formula. That's to their benefit. It is a limit. It's saying you can't charge more. Who does that benefit? Not charging more doesn't benefit the DOC. It just benefits the prisoners. I don't see how it benefits the DOC because if they can't do whatever they want, if they can do whatever they want, that would be a benefit to them. Do you have any, say, legislative history that would support your argument here that it was designed to protect inmates from being overcharged? I just have the rules of statutory construction. Look at the ordinary words that we're looking at. I do cite statutory construction rules throughout the brief. You read it. It says there's a limit. In order of common sense, who benefits from the limit? Not the DOC, but the prisoners. Otherwise, the prisoners would have to pay more, and that would be a detriment. Couldn't an argument be made that it was designed to protect the citizens of the state, the taxpayers, from having a commissary in place that didn't charge sufficient prices to even cover the cost of the items being sold, to establish at least a minimum amount that it would cover the cost of the goods being sold and to provide for the cost of personnel? They should talk to the legislators because the legislators came to a decision on that, came to the percentage. They are the ones who make that type of decision, not the people in general. They let people come down here and make that decision. They did. They put the limit on it. To them, that was sufficient. If it's not, the remedy is political, not legal. So that would be my argument. That answers that question. This is not the first time I've been before a court, and it's the first time I have just given such a blank and such a point. I apologize for that again. So I've gone over where the statute specifically limits, how the statute benefits the inmates, how nobody else is doing, how the auditor general says this is wrong, if you look at the action that's pleaded, and it has to be admitted that they are overcharging, that's wrong. I just know by what authority can they say we have a right to go beyond the statutory maximum? So we establish the wrong. Now, how do you remedy the wrong? Well, if you listen to the state, one day they say you go to the court of claims, the other day they say you don't go to the court of claims. But then the Supreme Court says if they have a monetary interest, they may be getting back to my point now, if they have a monetary interest, the statute, the mere fact, the point that was raised is that there is nothing specifically about the overcharging in the case law, and that we're dealing with other statutes such as deductibles. But what we're actually looking at, and my point is this finally, the point is that we're looking at a statute, and either they all apply or none of them apply. And I suggest they all apply. It's just because one case does not have our specific issue, and is in our favor, such as the deductible issue. If it's in our favor, it doesn't mention the commissary. The principle of law has to be the same. You can't have a principle of law for this, and then the same statute has a different standard of how you're going to interpret stuff. So the mere fact you don't have, never talked about, the commissary aspect being specifically said by the Supreme Court to be something there's a remedy for, it doesn't matter. It doesn't matter because they are already talking about a different section of the statute, and otherwise we have a law designed by the luck of the draw about who does what. To some extent that's where a system does work, but when you look at a statute, and the statute says you have a remedy for financial problems, that you bring to the circuit court, there's no defense to say you never talked about the one that come up now. We have to have some logical application to apply principles across a broad spectrum. That was a point I was struggling with for about four or five, six, ten minutes before I got it out. Those are the main parts I would stand for questions. All right. Thank you. Thank you. Ms. Buell. May I please report? Counsel. Good morning, Your Honors.   I am an assistant attorney general with the U.S. Department of Justice. This court should not overrule Jackson v. Randall. Plaintiffs have offered no compelling reason to do so, and so this court should reaffirm its commitment to Jackson's holding. This case is exactly like Jackson. In Jackson v. Randall, an inmate brought an action under the Unified Code of Corrections seeking to limit the amount of overcharges that the prison could operate at its commissary. This court held that prisoners did not have a constitutional right to have commissary items sold to them at a particular price. In addition, this court also held that inmates had no standing to bring this cause of action because the Unified Code was created to provide guidance to prison officials. The Unified Code of Corrections is a meaningful statute that exists to guide prison officials in the difficult task of prison management. Justice White, as you were discussing with counsel earlier, the statute was not created to actually benefit inmates. It was created in order to provide a blueprint for prison officials to operate prisons on a day-to-day basis for the benefit of the public. The Unified Code does not confer additional rights on inmates. In fact, under this court's precedent in Ashley v. Snyder, the only rights that inmates have in prison are constitutional rights, such as adequate shelter, food, sanitation, medical care, safety, the opportunity to exercise religious freedom, and the right of access to the courts. Commissaries are not on this list. The purpose of the commissary section, Justice Harris, as you pointed out, is to benefit the taxpayers to ensure that the cost of commissary prices are covered and also to provide for department personnel. In particular, it helps guide prison officials in how to operate their commissaries, what to do with the increased costs of state employees, and what to do to provide utilities to the commissary and the added costs, because a commissary is not exactly like a general store or a CVS that you would go to in the general public. The Unified Code of Corrections does not exist to give inmates right to commissary goods at a particular price. This is the same holding that the 3rd District reached in Rural v. Department of Corrections. The 3rd District agreed with this court's holding in Jackson that inmates had no right to commissary items at a particular price and that they lacked standing to bring a lawsuit under the Unified Code of Corrections. The Unified Code is designed to provide guidance to prison officials, and to depart from the holding of Jackson now would be to create an inter-district split between this court and the 3rd District. In addition, I would also like to take a moment to discuss the Court of Claims argument that counsel raised earlier. I want to clear up a little bit about the Sovereign Immunity and Court of Claims argument, keeping in mind that in order to even reach the Sovereign Immunity point, this court would have to first overrule Jackson. In terms of the Court of Claims argument, there aren't any sort of contrary arguments here. The State has always said that there is no right to have commissary items at a particular price and that the overall statute itself is to benefit the Department of Corrections. Thus, it hasn't made any sort of contrary arguments. To the extent that Jackson would be overruled, the appropriate place for this case is in the Court of Claims since it is an action against the State that's founded upon a violation of the law of the State. Plaintiffs aren't necessarily guaranteed a favorable forum, most likely because there are no rights that are involved here. Thus, if there are no further questions, I don't see any. Thank you. then we would ask that this Court affirm the dismissal of the Circuit Court. Thank you. Counsel, Mr. Kaslin, rebuttal? If Jackson v. Randall was wrongly decided, and if other circuits are relying upon Jackson v. Randall for their decisions, but if Jackson v. Randall is wrong, they are now working under the wrong process. A case comes to my mind, and I may or may not have explained it, but the Carolina versus Prison Review Board was a case where somebody wanted some records and it turned out the question was whether or not there could be attorney's fees, and the Court said that if you don't give attorney's fees, you have to give attorney's fees in order to, otherwise it will never discourage the public body from putting all sorts of roadblocks in the way that people wanted. And the problem with that case was that there was a change in the law about attorney's fees and the trial judge used the wrong standard. He used the new statute instead of the old statute. And the principle there is that you have to decide your cases on the proper standard of law. And if there's a mistake, that's what participatory hearings are for. And that's why you have the opportunity in case law, and I've cited some cases that say you can reverse yourself, you can reverse the Court, even though you three may not have been on the panel, but you still have the right to do so, and I would suggest a duty to do so, if you can see that it was wrong. If that's going to cause a split from other people who are now relying upon a wrong decision, I don't buy that argument. I think that we should say, if you reverse it, you're going to cause a split. Well, if that's not the factor, what's the right thing to do? In other words, the right thing to do is to correct the wrong that's been demonstrated here, that there is something wrong with it. So is there no compelling reason? Yeah, if it's wrong, there's a very compelling reason to do it. If the decision was incorrect, if you never consider the aspect before of the property interest versus the liberty interest. As the Supreme Court has shown, the liberty property interest can be maintained, can be sued for, handed to the Court. That's something that never came up before. And so that, to me, would be a compelling reason. You have a brand new element to the case never considered before. And you always say that the case was decided based upon what was presented to the Court at that time. So it's something new. If you look at a statute, the intent does not come from the committee meetings or any ancillary information. The intent comes from the plain words of the statute. It's a clear and unambiguous end of story. You don't look beyond anything else. And here it says, you can charge up to a certain amount. And they went beyond that. That is what the intent was to prevent. Otherwise, there's no reason in the world to have put the limit on to do it in the first place. Public benefit. Again, it's a statute, not the ancillary consideration. But the public benefit. I'm going to go off my rocket someday and blow somebody away, and I'll be in there. So right now, it would be to my benefit to have the commissary. Anybody in the public could end up in there. Now, it's a facetious argument of sorts. At the same time, it does show that I'm not sure how the public benefits from the commissary. They don't do it at all. From a standpoint of an efficient prison system, yeah, they do. But it benefits the public for the public service to follow the public law. It does not benefit to do otherwise. It is a direct contradiction as it goes against the rule of law. And I've heard no explanation as to why at one time they say you must go to the court of claims, when previously they say you cannot go to the court of claims. Again, I stand for questions. I don't see any. Thank you, counsel. Thank you, Paul. Can we ask for that to be reversed, to be amended for hearing on the complaint? Thank you. The case will be taken under advisement and a written decision shall issue.